Craig H. Durham
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, Idaho 83702
Telephone: (208) 724-2617
Facsimile: (208) 906-8663
chd@fergusondurham.com
Attorney for Defendant Dillard

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>JONATHAN DILLARD,<br><br>      Defendant. | Case No. 1:15-CR-00170-DCN<br><br>**REPLY TO THE GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |

Jonathan Dillard, with the assistance of pro bono counsel, replies to the Government's objection (Dkt. 203) to Dillard's motion for compassionate release (Dkt. 192).[1]

---

[1] This Court appointed the undersigned counsel to represent Dillard on appeal in the Ninth Circuit (Dkt. 200), which Dillard has since moved to be dismissed. As set out

1

The Government's sole argument is that Dillard has not exhausted his administrative remedies in the Bureau of Prisons. (Dkt. 203, pp. 2-3.) The Government "confirmed with the Bureau of Prisons that the Defendant has not requested compassionate release from the warden," and it writes that Dillard's "last request for compassionate release to the warden was when he was in custody in 2019." (Dkt. 203, p. 2.) The Government contends the motion is not "ripe." (*Id*.) It does not address on the merits any of the arguments that Dillard has attempted to make in support of his request and has left those unaddressed.

## DILLARD HAS SATISFIED THE EXHAUSTION REQUIREMENT

Contrary to the BOP's representation to the Government's counsel, BOP's own records show that Dillard *has* recently requested compassionate release. Through an intra-system email to the warden, dated August 26, 2023, Dillard wrote "Here now comes Jonathan Dillard, applying for compassionate release." (*See* Exhibit B.) In the body of that email, he described the myriad serious and deteriorating medical conditions that he was experiencing, including that he is a type II and insulin-

---

in the attached Declaration of Craig H. Durham, after Dillard mailed his "Notice to Dismiss Counsel" to this Court, docketed on October 13 (Dkt. 205), counsel and Dillard reached an agreement in which counsel would assist Dillard pro bono in this Court on his motion for compassionate release.
  Dillard also filed on October 13 a partially readable pro se documented labeled "motion for decision on compassionate release request to be made upon no later than the deadline of Oct. 19, 2023 if your honor so please." (Dkt. 204). To the extent Dillard is seeking an expedited ruling, Counsel incorporates that document here.

dependent diabetic, has had a heart attack in the past, and has chronic lung disease. (*Id.*) The warden's office responded, "[y]our request is noted and will be forward [sic] to the Warden for review to start the process." (*Id.*) In a series of additional emails to the warden's office and medical providers, Dillard reiterated his serious medical conditions. (Exhibit B.)

On September 1, 2023, SeaTac FDC Warden Howard Barron was making rounds on Dillard's unit, going to each resident's cell and asking them their concerns. (*See* Declaration of Craig H. Durham, at ¶ 11) Dillard spoke personally to Warden Barron about his request for compassionate release from a few days earlier. (*Id.*) Barron told him he would potentially get quicker relief through the courts than through the BOP process, and he denied the request after noting that Dillard was not sufficiently limited in his activities of daily living, including that he was "ambulatory." (*Id.*) Aside from the obvious fact that Dillard was not ambulatory – he was sitting in a wheelchair at the time – this was a denial on the merits of Dillard's request. But the warden even followed up in writing with a formal denial, which is attached as Exhibit C. The motion is ripe because 30 days have elapsed since Dillard's documented request to the warden. *See* 18 U.S.C. § 3582(c)(1)(A)(prisoner may bring a motion on his own after … "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility.").

Respectfully, the Court should find that Dillard has allowed BOP to seek compassionate release on his behalf, and it has declined. No useful purpose would be

served by requiring additional administrative procedures in the BOP. The motion is properly before the Court.

## STANDARD OF LAW

The First Step Act of 2018 amended the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), so that an incarcerated individual can bring a motion for compassionate release directly to the court that sentenced him. The Act gives the court the authority to reduce a sentence when "extraordinary and compelling reasons" warrant it. 18 U.S.C § 3582(c)(1)(A)(i). The court must first find that a reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and it must also consider the § 3553(a) sentencing factors. 18 U.S.C. § 3852(c)(1)(A)(ii).

## EXTRAORDINARY AND COMPELLING REASONS WARRANT RELIEF

When this Court revoked Dillard's supervised release and sentenced him to six months in prison as a sanction, it included no period of supervised release to follow. (Sent. Tr., p. 20.) As for the prison portion of the sentence, the Court stated that it wanted to send "a message to the defendant and to others in the community that this type of illegal conduct will not be tolerated and will be punished." (*Id*. at 18.) Even with that, the Court still found that Dillard would not pose a continuing risk to society, given his family support, minimal criminal history, and his overall attempt to abide by society's rules. (*Id*. at 19.) The Court decided "to put it into his hands and his family's

hands as far as the future goes. What that means is I am not going to impose any further supervision." (*Id.*)

The Court's stated goal of imposing a punishment for these technical violations and sending a message to Dillard and others has now been accomplished. He has completed nearly five of his six months of imprisonment. His release date is November 23, 2023. *See* https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results. Given that Dillard has served 80% of his sentence, any additional benefit in the punitive message that the Court wanted to send by making Dillard serve the final weeks of his confinement at SeaTac is negligible.

On the other hand, the 56-year-old Dillard's poor health began to deteriorate rapidly while he was in custody in the Ada County Jail and has reached a perilous point over the last several weeks at the SeaTac Federal Detention Center. (*See* Exhibits A, B, and F.) He is at risk in these final weeks of a potentially catastrophic medical event. That risk far outweighs any penological benefit from making him serve six full months instead of five.

Dillard developed a urinary tract infection in the Ada County Jail that went untreated. (*See* Proffer in Durham Dec., at ¶ 10.)[2] His weight dropped from 243 pounds

---

[2] Given the short time that counsel has been involved in this case, he has not received medical records directly from the Bureau of Prisons. He has, however, interviewed Dillard, his close family, other inmates housed with Dillard, and counsel has access to certain Ada County Jail medical records. All corroborate Dillard's claims about his serious medical conditions and the lack of care at SeaTac.

to 185 pounds over a matter of weeks. (*Id*.) That made him frail and weak; he walked into jail but is now confined to a wheelchair most of the time. (*Id*.) He needs help from other inmates. (*Id*.; *see also* Exhibit D, witness statements.) He has other well-documented chronic conditions, including type II diabetes, heart disease, and emphysema. (Durham, at ¶ 10; *see also* Sealed Exhibit F.) Those conditions have not been controlled during his stay at SeaTac. (Durham, ¶ 10.) His glucose level is routinely near 300 mg/dl. (*Id*.) Despite his documented emphysema and bronchitis, SeaTac medical providers did not provide him with assistive oxygen until a few days ago. (*Id*.) He passed out the last weekend in September and needed assistance. (Exhibit D.) His vision has gotten worse and his handwriting has become almost non-legible. Just this past week, many inmates at SeaTac have developed COVID, and Dillard reports that he is now ill, most likely with the disease. (Durham, ¶ 10.) He would be most vulnerable to a catastrophic complication from COVID. https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html.

There is no doubt that Jonathan Dillard suffers from a range of serious medical conditions that are not being treated well at SeaTac, posing a serious risk of harm to his long-term health. That the BOP would inform the Government's counsel that Dillard had *not* sought compassionate release since 2019 when BOP's records prove that he had

---

But should the Court deem that insufficient for any reason, it may choose to order the Government to provide the medical records directly to the Court.

sought such relief in late *August of this year* should give the Court no confidence that BOP can handle his medical needs competently and humanely.

\* \* \*

Dillard seeks an immediate modified sentence of time served. Under 18 U.S.C. § 3582(c)(1)(A), the Court must take into account the § 3353(a) factors to determine whether the requested new sentence would be sufficient but not greater than necessary to meet the purposes of sentencing.

Dillard is serving a short sentence – six months – for technical supervised release violations. His projected release date is November 23, 2023, a matter of weeks from the date of this reply, and he will have served over 80% of the Court's sentence. Granting his motion and sending him home immediately would not in any way diminish respect for the law or the seriousness of the offense. 18 U.S.C. § 3353(a)(2)(A). A five-month prison sentence provides the same deterrent effect, and the same protection to the public, as the original six-month sentence did. 18 U.S.C. § 3353(a)(2)(A),(B).

On the other hand, weighing strongly in favor of release is the need for the sentence imposed to "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). Dillard is presently suffering. He is at a high risk for continued health deterioration under current circumstances. Living in the tight quarters of a prison as a medically vulnerable person multiplies that risk. In the undersigned's

experience, the medical care at SeaTac is extremely poor, as the facility is understaffed and overbooked with inmates serving relatively short sentences. Dillard can receive the care he needs much more effectively in the community.

Finally, the Court has already found that Dillard does not pose a risk of continued dangerousness and that is why it terminated any additional term of supervised release. (Sent. Tr., pp. 18-20.) The Court's reason for the prison sentence was to send a message of deterrence for non-compliance, not necessarily to protect society from Dillard. The Court found that with Dillard's limited criminal history, his friend and family support, and his attempts to comply with the law, it was reassured that Dillard did not need to continue on supervision after he finished his prison term. (Sent. Tr., p. 18-19.)

Respectfully, the Court should grant this motion and modify Dillard's sentence to time served, effectively immediately, which is sufficient to meet all the ends of sentencing under § 3553(a). Anything more is greater than necessary. If the Court were to have any residual concerns of risk, however, it could safely order Dillard to complete the remainder of his sentence, until November 23, 2023, on home confinement. Dillard has housing with his mother in Kuna. Before he came to prison this last time, he was his mother's caretaker. She is elderly and experiences some signs of dementia. She needs Dillard home with her, as do his brothers and sister.

For any of these reasons, or for any of the reasons that Dillard has given to the Court acting on his own behalf, the Court should grant the motion for compassionate release.

Respectfully submitted on this 17th day of October 2023.

><ins>Craig H. Durham</ins>
>Craig H. Durham
>Attorney for Jonathan Dillard